# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A ~~SEARCH~~ WARRANT
### *SEIZURE*

I, DEA Task Force Officer Terry Hose, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I have been a sworn police officer with the Hagerstown Department of Police since 1995. I have been federally deputized as a Task Force Officer with the Drug Enforcement Administration since 2002 and have initiated and participated in numerous investigations involving violators and violations of the controlled dangerous substance laws of the State of Maryland and the United States of America. During the course of my employment, I have made or assisted in the arrest of over five hundred individuals for controlled substance offenses. I have also authored numerous search and seizure warrants for violations of the controlled substances laws. My experience includes being directly involved in investigations where court-ordered wiretapping has been utilized, and I am familiar with methods of narcotics trafficking and terminology used by narcotics traffickers.

2. During my time in law enforcement, I have learned the following:

    a. Persons involved in the illegal distribution of controlled substances keep and maintain records of their various activities. Experience in similar cases has established that such records are regularly concealed in a suspect's automobile, residence, office, and on his person, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. The aforementioned items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their person, where they have ready access to them. I know that drug traffickers often have several residences decreasing the likelihood of detection by law enforcement.



b.   Persons involved in the illicit distribution of controlled substances, due to advancement in technology, may be utilizing computers or other electronic storage media to store the records listed above.

c.   I also know, based on training and experience, that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and to finance their ongoing narcotics business. Based on training and experience I know that persons involved in large scale drug trafficking conceal in their residences currency, financial instruments, and evidence of financial transactions relating to narcotics trafficking activities.

d.   Persons involved in the illicit distribution of controlled substances utilize cellular telephones, pagers and other electronic communications devices to facilitate illegal drug transactions. The electronically stored information on these devices is of evidentiary value in identifying other members of the drug trafficking conspiracy and establishing the relationship between these individuals.

e.   Persons involved in the illicit distribution of controlled substances take or cause to be taken photographs of themselves, their associates, their property and their product. These traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person.

g.   I know, based on training and experience that drug traffickers commonly have in their possession, that is, on their person, in their residences and/or businesses, firearms and other weapons.  Said firearms and weapons are used by the traffickers to protect and secure their large amounts of narcotics and United States currency from loss to law enforcement agents or other members of the criminal element that are motivated by greed.

## ACCOUNTS TO BE SEIZED

3.   This affidavit is submitted in support of an application to seize for forfeiture the contents of the following bank accounts, which contains proceeds derived from violations of 21 U.S.C. § 846:

- **Bank of America Account No. 4833635994 ( the "BOA Account")**, held in the name of Keystone Auto Enterprises LP, Sales Account, with mailing address 10548 Flatlands 1st Street, Brooklyn New York, 11236.

- **Citibank Account No. 92042784 ( the "Citibank Account")**, in the name of Paul REID, with mailing address of 10548 Flatlands 1st Street, Brooklyn New York, 11236.

12 2420 PWG — 12 2421 PWG

## II. PROBABLE CAUSE

### A. OVERVIEW

4. Since 2009, the WNTF ["Washington Cont Narcotus Task force"] has been investigating the drug trafficking organization headed by Gary LAYNE (aka "Muggs"; aka "Muggsy"). Through debriefs of sources of information and the court-authorized wiretaps described below, I have learned that LAYNE operates a large-scale drug trafficking organization, selling marijuana, cocaine and crack cocaine, in Maryland, Virginia, West Virginia, and Pennsylvania. LAYNE's main associates are: Robert COLLINS (aka "La Kid"), Learnell WILLIAMS (aka "L"; aka "L.A."), Andrae EDWARDS (aka "Dre"), Colleen SCHAEFFER, Paul REID, Jessica SAVOY (aka "Big Ma").

5. LAYNE's main distributors of marijuana and other controlled substances are EDWARDS, BETHUNE, WILLIAMS, COLLINS and SAVOY. LAYNE's main method of obtaining marijuana appears to be shipping it through common carriers, such as the US Postal Service.

6. LAYNE launders his drug proceeds through a Bank of America account controlled by Paul REID. LAYNE, SCHAEFFER, REID and COLLINS have deposited cash into this account for withdrawal at another time and place to purchase drugs. LAYNE's current girlfriend is SCHAEFFER.

7. On May 10, 2012, a grand jury sitting in and for the District of Maryland returned a six-count indictment (ELH-12-251) charging LAYNE, EDWARDS, BETHUNE, WILLIAMS, COLLINS and SAVOY with conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 and LAYNE, REID, COLLINS and SCHAEFFER with conspiracy to commit money laundering, in violation of 18 U.S.C. §1956.

LAYNE and SCHAEFFER were also charged with substantive counts of distribution of marijuana and money laundering. That indictment provides notice that the government will seek to forfeit a total of $484,875 to the government.

### B. USE OF THE BOA ACCOUNT TO FACILITATE DRUG TRAFFICKING AND MONEY LAUNDERING

8. LAYNE utilizes a Bank of America ("BOA") Account to facilitate his drug trafficking activities. The account, controlled by Paul REID, shows money laundering activity spanning from June 2008 to present. Bank of America Account No. 4833635994 **(the "BOA Account")** was opened June 26, 2008, and is titled in the name Keystone Auto Enterprises LP, Sales Account. Information provided at the time of the account opening reflects this entity as an Auto Dealer, EIN 20-8735396, using a mailing address of 10548 Flatlands 1st Street, Brooklyn New York, 11236, work phone number of 347-512-6281, home phone number of 718-444-5669. Bank records show the sole owner/signatory of the account as REID, he identified himself as the owner of Keystone Auto Enterprises, and he provided Delaware driver's license #1142836 at account opening. Delaware MVA databases show Delaware Drivers License # 1142836 as belonging to Paul REID, with an address of 117 Buena Vista Dr, New Castle Delaware, and the same date of birth and SSN as REID.

9. As of May 15, 2012, the **BOA Account** has a balance of $39,325.

10. Database searches show the address 10548 Flatlands 1st Street, Brooklyn New York, 11236 is associated with PAUL REID. The majority of deposit slips used for the **BOA Account** have the handwritten address 10548 Flatlands 1st Street, Brooklyn New York entered in when making cash deposits.

11. Public records databases show the EIN 20-8735396 used at bank account opening for

4

Keystone Auto Enterprises LP is associated with an auto dealer DBA Keystone Auto Center at 981 Lincoln Hwy, Morrisville Pennsylvania, 19067. Checks deposited into the BOA Keystone Account also use the 981 Lincoln Hwy, Morrisville Pennsylvania, 19067 address. Two active entities are incorporated at that address: 1) Keystone Auto Enterprises LP, which lists as a general partner, Excel Management Group and President Michael Mormando of 8 Nancia Drive, Levittown Pennsylvania, 19054; and 2) LC Keystone Auto Enterprises LLC, listing an Officer as Joshua Termeer. Surveillance of the site reveals it to be a small car lot with approximately 20-25 used cars, and a mobile home trailer style office, next to a residence. There is visible sales traffic during the day. Registration information of the vehicles present on the lot could not be determined during surveillance.

12. Intercepted calls,[1] including those above regarding EDWARDS and BETHUNE, indicate that LAYNE employs others in the organization to assist him in collecting drug proceeds, and that those proceeds are deposited in bank accounts to be used to purchase additional drugs. On January 25, 2012, between 10:55 a.m. and 12:01 p.m., there were several intercepted calls between LAYNE and SCHAEFFER, using 717-816-9972 (subscribed to Colleen SCHAEFFER), who I know to be LAYNE's girlfriend, wherein LAYNE told SCHAEFFER that he was going to the bank "by the 15." LAYNE later called SCHAEFFER and told her he was "there" and that she should bring him $3,500 from out of a drawer. At the time of this call, surveillance agents observed the rental car that LAYNE had been observed getting into earlier that day driving toward his apartment in Waynesboro. On the east side of the parking lot by LAYNE's residence, a black female was seen walking towards

---

1  On December 20, 2011, the Honorable Judge Daniel P. Dwyer for the Circuit Court for Washington County, Maryland signed an order authorizing agents of the WCNTF to intercept wire communications over telephone number 787-433-1829, used by LAYNE. Interceptions over this telephone ceased on December 24, 2011. On January 13, 2012, Judge Dwyer signed an order authorizing agents of the WCNTF to intercept wire communications over telephone number 301-302-2600, used by LAYNE. Interceptions over this telephone ceased on February 10, 2012.

5

the rear of the apartment building at the same time the rental vehicle in which LAYNE was a passenger pulled onto the same lot.[2] I believe the money that LAYNE was having SCHAEFFER retrieve was in relation to the calls from January 24 with UM 7776. *"Unknown male"* Ay TLH

13. On January 25, 2012, at approximately 12:40 p.m. there was an outgoing call from 301-302-2600 (LAYNE) to 173*169*7776 (UM 7776). What follows is a partial transcript of that call.

| | | |
|---|---|---|
| LAYNE: | Yeah, what's the number? | |
| LAYNE: | Yo | |
| UM 7776: | 483 363 5994 | |
| LAYNE: | 483 | |
| UM 7776: | 363 5994 | |
| LAYNE: | And it was Keystone | |
| UM 7776: | Yeah | |
| LAYNE: | And put the Auto right? | |
| UM 7776: | Son, you know this already man. | |
| LAYNE: | Forgot man. I, I don't remember | |

14. I believe that when UM 7776 gave LAYNE the number "483 363 5994" he was transmitting a bank account number. At approximately 12:41 p.m., surveillance agents saw LAYNE's rental vehicle at the Bank of America in Thurmont, Maryland.

15. From a review of documents dating from the opening of the **BOA Account** in 2008 forward, the REID/Keystone Auto account shows a small amount of apparently legitimate business – evidenced by multiple auto auction checks and a small number (under 10) of personal checks being

---

[2] During surveillance on this date, LAYNE was seen getting into a rental vehicle prior to meeting a female similar

deposited reflecting the sale of autos. However, there appear to be no records of checks being written to purchase any cars and only recently (starting in 2012) did REID begin paying himself a monthly salary of $2,750 (by check). There exist only three form 8300s, "Report of Cash Payments over $10,000 in a Trade or Business", using Keystone's EIN since January 1, 2009. Instead, the activity in the **BOA Account** consists almost entirely of even-amount cash deposits, under $10,000, usually in the northeast (New York, Maryland, etc.) and a corresponding withdraw of a similar amount within days or hours in a source state for drugs (California and Texas).

16. From the period of May 4, 2009, to February 27, 2012, $484,875 in cash deposits and $219,415 in cash withdrawals have been made in the REID / Keystone Auto account. Specifics for the account's cash activity follows:

    i) Of the cash deposits from which deposit slips are available: 3 occurred in Connecticut, 5 occurred in Florida, 17 occurred in Maryland (totaling $111,950), 6 occurred in New Jersey, 59 occurred in New York, and 1 occurred in Pennsylvania.

    ii) Of the cash withdrawals for which information is available: 24 occurred in Texas (totaling $120,000), 7 occurred in California, 2 occurred in Florida, 1 occurred in New Jersey, 1 occurred in Nevada, 10 occurred in New York, and 1 occurred in Pennsylvania.

17. The evidence supports that the REID / Keystone Auto account is intentionally being used by the LAYNE DTO as a de facto money transmitter. The majority of cash deposits, all of which (except one) were below the $10,000 reporting threshold, occurred in rounded dollar amounts and are made via counter deposit or drive through locations of BOA in New York and Maryland. Cash withdrawals of similar dollar amounts (none over $10,000) occurred inside BOA branches in Texas, California, New York, Florida, and Nevada. These withdrawals often occur on the same day in like dollar amounts – or on closely following days. Examples of the money movement that fits the investigation information:

---

in appearance to SCHAEFFER at LAYNE's apartment building.

i) On March 7, 2011, $3,150 was deposited in cash in Maryland. The same day, $2,500 in cash was withdrawn in California.

ii) On November 10, 2011, $5,000 was deposited in cash in Maryland (photo below shows this to be SCHAEFFER).[3] The same day, $5,000 in cash was withdrawn in Texas.

iii) On December 1, 2011, $5,200 was deposited in cash in Maryland (photo below shows this to be LAYNE and SCHAEFFER). The same day, $9,000 in cash was withdrawn in Texas.

iv) On December 22, 2011, $3,600 was deposited in cash in New York (photos show an unknown male). The same day, $9,500 in cash was withdrawn in 2 transactions in Texas.

v) On January 24-25, 2012, $7,500 was deposited in cash in Maryland and New York in 2 transactions (photo shows this to be SCHAEFFER depositing in Maryland). With no interceding transactions, on January 27, 2012, $7,500 in cash was withdrawn in Texas.

vi) On February 7, 2012, $5,000 was deposited in cash in New York (photos show this to be REID). On February 8, 2012 and February 10, 2012, $8,000 in cash was withdrawn in 2 transactions in California (photo below shows this to be REID).

18. For the activity referenced above, a larger sampling of late 2011 and early 2012 bank surveillance photos of the individuals depositing / withdrawing money show a minimum of five unique persons accessing the account. The vast majority of the cash activity for both deposits and withdrawals on the account is REID (as shown when matching his Delaware driver's license photo with bank photos). Other photos indicate infrequent use by LAYNE and SCHAEFFER, a single use by a Takeia A. Grant, and a single use by an unknown male.

19. Based on my training and experience, I believe that the withdrawals from the **BOA Account** represent funds to be used to purchase additional drugs for sale by the LAYNE DTO. The amounts are less than $10,000 to avoid reporting requirements, which I know is something done by drug traffickers to avoid detection. Furthermore, the withdrawals are almost always done in

---

[3] Photographs from BOA surveillance cameras were compared to MVA photos of LAYNE, REID and SCHAEFFER.

8

locations which I know to be source locations for drugs such as marijuana - California and Texas. Additionally, as stated above, I believe that because the withdrawals so closely follow the deposit of money and because the amounts closely correlate, that the Subject Account is being used to transmit money to be used to purchase drugs for the LAYNE DTO.

### C. TRANSFERS OF DRUG PROCEEDS TO THE CITIBANK ACCOUNT

20. I also believe that the funds in the **BOA Account**, which represent proceeds of the sale of drugs, are transferred to other accounts controlled by REID. In 2001, REID opened a **Citibank Account** #92042784, a money market account (the "**Citibank Account**"). The address on the account is 10548 Flatlands 1st Street, Brooklyn New York, 11236 and the sole signatory on the account is REID. On January 10, 2011, a cashier's check for $20,000 written payable to Paul REID was deposited into this account. The cashier's check, #2103302 dated January 10, 2011, was drawn on the **BOA Account** and was endorsed by REID. On February 22, 2011, a cashier's check for $17,500 written payable to Paul REID was deposited into this account. The cashier's check, #2792639 dated February 22, 2011, was drawn on **BOA Account** #4833635994 of Keystone Auto Enterprises LP and was endorsed by REID. The **Citibank Account** shows periodic transfers and withdrawals over time, usually into other Citibank accounts, but it does not appear to have a linked debit card or personal checks written from it.

21. As of May 15, 2012, the **Citibank Account** has a balance of $9,014.

### FORFEITURE LAW

22. Any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of violation of drug distribution or conspiracy to distribute drugs is subject to forfeiture to the United States pursuant to 21 U.S.C. §881(a) and 21 U.S.C. § 853(a)(2). Any property subject to forfeiture under either statute may be seized pursuant to a warrant issued under 18

U.S.C. § 981(b) (for civil forfeiture) or 21 U.S.C. § 853(f) (for criminal forfeiture).

23. In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant under both statutes. *See United States v. Lewis*, 2006 WL 1579855 at *4 (D. Minn. 2006). The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture." Based on my training and experience, I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served.

## CONCLUSION

24.     Accordingly, I respectfully request that the court issue a seizure warrant pursuant to both 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) **Bank of America Account No. 4833635994**, held in the name of Keystone Auto Enterprises LP, Sales Account, and **Citibank Account No. 92042784**, held by Paul REID.

Task Force Officer Terry Hose
Drug Enforcement Administration

Sworn to before me this _16_ day of May, 2012 at ____ hours.

The Honorable Paul W. Grimm
United States Magistrate Judge